JONES DAY
Steven M. Zadravecz, Bar No. 185676
szadravecz@jonesday.com
Lauren E. Dutkiewicz, Bar No. 329017
ldutkiewicz@jonesday.com
3161 Michelson Drive, Suite 800
Irvine, California 92612.4408
Telephone: +1.949.851.3939
Facsimile: +1.949.553.7539

Attorneys for Plaintiff
APPLIED MEDICAL DISTRIBUTION
CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLIED MEDICAL DISTRIBUTION CORPORATION, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>ADVANCED TECHNOLOGY COMPANY KSCP,<br><br>Defendant. | Case No. 25-cv-02663<br><br>**COMPLAINT FOR:**<br><br>**(1) DECLARATORY RELIEF**<br><br>**(2) BREACH OF CONTRACT**<br><br>**(3) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**(4) INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br><br>**(5) ACCOUNT STATED**<br><br>**(6) UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT
Case No. 25-cv-02663

Plaintiff, Applied Medical Distribution Corporation ("AMDC" or "Applied"), a California Corporation, files this Complaint against Defendant Advanced Technology Company KSCP ("ATC"), and demanding a trial by jury, alleges as follows:

## INTRODUCTION

1. This action for declaratory relief seeks to determine the rights and obligations of the parties under the terms of the Logistics Services Agreement (the "LSA") entered into between AMDC and Defendant ATC on June 1, 2023. This action further asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, interference with prospective economic advantage, account stated, and unfair competition. As detailed below, ATC has failed to pay AMDC millions of dollars for products, has otherwise failed to provide required transition services, and has failed to comply with numerous terms in the written contract between the parties, in direct and willful violation of the LSA's express terms. ATC also has interfered with and disrupted AMDC's ability to conduct business in Kuwait.

## PARTIES

2. Plaintiff AMDC is a California corporation with its principal place of business at 22872 Avenida Empressa, Rancho Santa Margarita, California 92688. AMDC is a marketer and world-wide distributor of specialized surgical devices manufactured by its parent company, Applied Medical Resources Corporation ("AMRC"). AMDC is AMRC's global distribution arm and wholly-owned subsidiary, and distributes AMRC's products worldwide both directly and indirectly through independent distributors like ATC.

3. AMDC is informed and believes that ATC is a Kuwaiti joint-stock company with its principal place of business in Salmiya, Kuwait.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §1332(a)(2). The parties are completely diverse, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. The Court also has personal jurisdiction over the parties because AMDC and ATC contractually consented to the jurisdiction of this Court in paragraph 9(b) of the LSA, entitled "Governing Law and Jurisdiction," which provides in relevant part: "[t]he federal and state courts within the State of California shall have exclusive jurisdiction to adjudicate any dispute arising out of this Agreement." Moreover, California substantive law is applicable to the parties' dispute because the choice of law provision in the LSA at paragraph 9(b) provides that: "[the] Agreement shall be governed for all purposes by and construed under the laws of the State of California and the United States. . . ." Under California law, mandatory forum selection clauses, contractual consents to jurisdiction, and choice of law provisions are valid, binding and enforceable.

6. Venue is proper under 28 U.S.C. §1391(b)(3) because ATC consented to personal jurisdiction in this district in paragraph 9(b) of the LSA, which provides in relevant part: "ATC hereby expressly consents to (i) the personal jurisdiction of the federal and state courts within California. . . ."

**FACTUAL BACKGROUND**

7. AMDC distributes AMRC's products worldwide through various channels of distribution, including through independent distributors like defendant ATC in Kuwait. AMRC is one of the largest private employers in Orange County, CA, and is a developer, manufacturer, and marketer of specialized surgical devices, and creates products designed to enhance surgical techniques in minimally invasive surgery, such as laparoscopic, cardiovascular, vascular, urology and general surgery. AMDC and AMRC, both of which are headquartered in Orange County, CA, have had their principal places of business in Orange County, CA since their

founding.

8. On June 1, 2023, Applied Medical Europe B.V., an affiliate of AMDC, entered into the Logistics Services Agreement ("LSA") with ATC, which became effective June 1, 2023, to memorialize the terms of distribution of products and services within Kuwait. In the LSA, Applied Medical Europe B.V. agreed to sell (and ATC agreed to buy) various surgical devices for distribution in Kuwait under the terms and conditions set forth in the LSA. The parties have done business together since in or around 2010, a relationship which has been governed by other, previous distribution contracts. The LSA is the latest iteration of a writing governing the parties' business relationship, and by its term, superseded all prior agreements, written or otherwise. A true and correct copy of the LSA is attached hereto as **Exhibit A** and incorporated herein by reference.

9. On or about November 2, 2023, Applied Medical Europe B.V. validly assigned the LSA to AMDC. ATC consented and agreed to the assignment. A true and correct copy of the assignment contract is attached hereto as **Exhibit B** and incorporated herein by reference.

10. Under the introductory section of the LSA, AMDC and ATC agreed to "cooperate with each other to establish and operate an efficient supply chain to procure, import, warehouse, market, promote, sell, and distribute the Products and Equipment within Kuwait . . . ."

11. Under paragraph 5(j) of the LSA, entitled "Payment to Applied," the parties agreed that "Applied shall submit an invoice to ATC based upon shipment of Product by ATC to Customers" and "[t]he fully invoiced amount shall be due to Applied within seven (7) business days upon receipt of payment by ATC for the corresponding customer invoice."

12. The parties further agreed under paragraph 5(j) of the LSA on a 365-day payment backstop that provides, in relevant part, "[i]n the event a Customer Invoice does not get paid by the Customer within 365 days of the date of delivery

of the Product to Customer by ATC, ATC shall pay the invoice of Applied as if the Customer had paid its Customer Invoice and ATC is responsible for pursuing the Customer for payment, unless agreed otherwise."

13. Under paragraph 9(b) of the LSA, entitled "Governing Law and Jurisdiction," the parties agreed that:

> [t]his Agreement shall be governed for all purposes by and construed under the laws of the State of California and the United States, without reference to conflicts of laws rules thereof and without regard to the United Nations Convention on Contracts for the International Sale of Goods. The federal and state courts within the State of California shall have exclusive jurisdiction to adjudicate any dispute arising out of this Agreement. ATC hereby expressly consents to (i) the personal jurisdiction of the federal and state courts within California, (ii) service of process being effected upon it by registered mail sent to the address set forth at the beginning of this Agreement, and (iii) the uncontested enforcement of final judgment from such courts in any other jurisdiction wherein Distributor or any of its assets are present.

14. Under paragraph 8(a) of the LSA, entitled "Term of Agreement," the parties agreed that "[u]nless extended by mutual agreement in writing or terminated in accordance herewith, this Agreement expires on [May 30, 2025] . . . ." Paragraph 8(b) further provides that to the extent the LSA's term was extended or renewed for any reason or duration, "it is not the intention that it be construed as a contract of indefinite duration, or 'evergreen' contract." AMDC and ATC never mutually agreed to extend the LSA and, as discussed further below, the LSA term expired according to its terms on May 30, 2025.

15. Under paragraph 8(g) of the LSA, entitled "Effect of Termination," the parties agreed that at least thirty days before the expiration of the LSA or as soon as possible upon receiving notice of termination of the LSA, "but in no event later than the effective date of termination," ATC must "provide to Applied a detailed list of and copy of all pending and active tenders (or equivalent of tenders in the Territory) for Products, and a list of all Customers in the Territory, including the

Customer's full name, shipping address, and purchase history for the twelve (12) month period preceding the termination date, including ship dates, Applied re-order number, product description, quantity, units of measure, purchase price from Applied and final sales price to Customer." A "tender" is a contract, either public or private, between a distributor and customer which has been approved and obtained through a process similar to an "RFP" or request for proposal. Whether a tender is public or private and in which Country the tender is obtained dictates the process for bidding, approval and contract consummation.

16. Under paragraph 8(h) of the LSA, entitled "Fulfillment of Orders Upon Termination," AMDC is entitled to assume, either directly or through a designee, ATC's obligations under such on-going tenders or their equivalent (if applicable), to the extent permissible by law and in its sole discretion. To that end, ATC must "plan for" and "fully cooperate with Applied and take all steps required to support the complete transition of all tender-related business (or equivalent of tenders in the Territory) to Applied." Thus, ATC expressly agreed that if the LSA expired, AMDC would have the sole discretion to assume ATC's obligations in each respective territory for ongoing tenders post-termination, and that ATC would fully cooperate in the transition process post-termination.

17. Paragraph 7(f) of the LSA, entitled Competing Products, ATC represented and warranted to AMDC that:
> as of the Effective Date and during the Term of this Agreement and for a period of twelve (12) months thereafter, ATC shall not, without Applied's prior written consent, directly or indirectly represent, market, promote, import, export, register, sell or offer for sale, distribute, or facilitate, initiate, or submit an application to do any of the foregoing within the Territory with regard to any products or product lines that, in Applied's reasonable judgment, compete with one or more Products.

18. Under paragraph 8(i) of the LSA, entitled "Limitation on Liability," the parties agreed:
> [i]n the event of termination by either Party in accordance with

> the provisions of this Agreement, neither Party shall be liable to the other, because of such termination, for compensation, reimbursement of damages on account of the loss of prospective profits or anticipated sales or on account of expenditures, inventory, investments, leases or commitments in connection with the business or goodwill of either Party and each Party shall not be liable for, or owe the other Party, any compensation, damages or awards regardless of the other Party's expenditures, investments, or past efforts.

This provision served to limit the liability of both AMDC and ATC if and when the LSA was terminated, and the parties specifically agreed that neither would be liable to the other for compensation or reimbursement for, inter alia, "goodwill indemnity," compensation for unsold inventory of AMDC products, or any other compensation as a direct result of termination.

19. Paragraph 9(g) of the LSA entitled, "Legal Expenses," is a prevailing party attorneys' fees and costs provision, wherein the parties agreed that the prevailing party in any legal dispute brought by one party against another would be entitled to reasonable attorneys' fees, costs, and other expenses.

20. Paragraph 8(j) of the LSA entitled, "Survival of Certain Terms" provided that "[t]he provisions of Sections 1, 2, 3, 4, 5(g), 5(h), 5(j), 6, 7, 8, and 9 and the Quality Addendum shall survive the expiration or termination of this Agreement for any reason. All other rights and obligations of the Parties shall cease upon expiration or termination of this Agreement."

21. In summary, under the LSA, the parties agreed that: (1) ATC would remit payment to AMDC within seven business days upon receipt of payment by ATC for the corresponding customer invoice; (2) ATC would remit payment to AMDC for all invoices outstanding for 365 days or more, regardless of whether ATC had received payment from the customer; (3) any dispute arising out of the LSA would be adjudicated in a California forum under California law; (4) the LSA would naturally expire pursuant to its terms on May 30, 2025; (5) upon termination,

ATC would provide AMDC a list of all pending and active tenders and a list of all customers in the territory for the twelve (12) months preceding termination, thirty (30) days before expiration; (6) upon termination, AMDC would have the sole discretion to choose to directly assume ATC's obligations in each respective territory for ongoing tenders (or their equivalent) including and through the (12) month period after termination, as permitted by law; (7) ATC represented that for the duration of the LSA's term and for a period of twelve (12) months following termination of the LSA that it would not, without AMDC's prior written consent, represent, promote or otherwise try to sell within the Territory any products or product lines that compete with one or more of AMDC's products; (8) neither party would be liable to the other for any termination related payments (either for business good will indemnities, anticipated lost profits, customer lists, remaining inventory, etc.) as a direct result of termination; (9) the prevailing party in any dispute arising out of the LSA would be entitled to its reasonable attorneys' fees and costs incurred; and (10) the payment terms set forth in paragraphs 5(g), (h), and (j), transition and termination terms set forth in paragraphs 7, 8(g) and 8(j), attorneys' fees and costs provision set forth in 9(g), governing law and jurisdiction provisions set forth in 9(b), and the survival provision in paragraph 8(j) survived expiration of the LSA.

### ATC Quickly Falls Behind In Payments Due Under The LSA

22.  ATC made its first payment to AMDC as required by the LSA on July 17, 2024. Almost immediately after its first payment, however, ATC repeatedly breached the LSA by failing to pay invoices as they became due.

23.  By December 9, 2024, ATC's outstanding balance reached $3.9 million, with $3 million immediately due to AMDC. These amounts only continued to accrue as ATC flagrantly ignored its obligations under the LSA to timely tender payment to AMDC. From January 2025 through present, ATC's outstanding balance is $1,880,067.46, with a total past due balance of $2,174,575.15.

24. ATC's ongoing refusal to pay AMDC's invoices forced AMDC to escalate its collection efforts. AMDC repeatedly contacted ATC about its outstanding balance, including for amounts that had been invoiced more than eighteen months earlier.

25. ATC repeatedly flouted its obligations under the LSA and ignored AMDC's various attempts to collect the balance. To the extent ATC made any payments, they were sporadic and satisfied only part of the outstanding balance due to AMDC.

### Expiration Of The LSA And Prospective Transition

26. By its terms, the LSA was set to expire on May 30, 2025 absent mutual agreement by the parties to the extent permitted by the LSA and its terms. Given ATC's persistent nonpayment and aging receivables, AMDC elected to end its relationship with ATC, permit the LSA to expire, and issue timely written notice of non-renewal on February 28, 2025. Mariane El Kfoury, Director of Compliance Operations for AMDC, sent ATC's leadership team written notice of non-renewal of the LSA, confirming that the agreement would expire pursuant to its terms on May 30, 2025.

27. AMDC's notice of non-renewal created obligations for ATC under paragraph 7(b) of the LSA, including the requirement that ATC cooperate with AMDC to perform certain transition services to ensure no market interruption. Specifically, ATC agreed and was required to (1) supply AMDC with "all useful documentation and information about Customers in the Territory;" (2) "provide to Applied a list and copies of all current contracts and price agreements held by ATC, as well as for each Customer the hospital name, address, products, date of contract, details of contract, duration of contract, pricing for the previous twelve (12) months for each Product, and current pricing for each Product;" (3) "forward leads and inquiries from Customers and prospective Customers concerning Products" to AMDC; and (4) use best efforts to cause the relevant government authority to

acknowledge the termination of ATC's activities with respect to the Products" and "transfer all applicable [government] registrations and approvals" to AMDC.

28. ATC has ignored its obligations under Paragraph 7(b) of the LSA and refused to cooperate with AMDC to transition the business to AMDC or to provide the information called for by Paragraph 7(b) of the LSA. ATC continues to refuse to comply with its obligations under Paragraph 7(b) of the LSA to this date.

### AMDC's Efforts To Collect Sums Owed Post-Termination

29. As of the expiration of the LSA, ATC had an outstanding balance of $2.3 million and its balance due and owing immediately to AMDC totaled $958,000. AMDC sent yet another correspondence to ATC in an effort to collect the sums owed by ATC, which went unanswered.

30. For months, AMDC continued to engage ATC on collections. Each attempt at dialogue with ATC went either unanswered or was met with excuses and other delay tactics. Importantly, at no point did ATC dispute that it owed AMDC under the LSA nor did it dispute the amount owed.

31. In response to ATC's persistent refusal to cure its breach of the LSA, on November 2, 2025, AMDC issued a formal final notice to ATC of its payment obligations and other transition duties. AMDC again explained that ATC's transition duties and payment obligations, including the contractual requirement to remit to AMDC within seven business days of ATC's receipt from customers and to pay invoices that remained unpaid by customers after 365 days "as if the Customer had paid," survived termination of the LSA. AMDC further provided ATC with an updated accounting of its outstanding balance of $1,880,067.46 and a total past due balance that had ballooned to $2,174,575.15, because a substantial portion of the balance was overdue by more than one year. AMDC demanded, by November 9, 2025, that ATC remit all collected amounts, pay all invoices outstanding longer than 365 days, provide a complete aged receivables report with customer confirmations, and establish a protocol for immediate remittance of any

future collections.

32. ATC responded to AMDC's November 2025 notice on November 17, 2025. Instead of agreeing to comply with its obligations under the LSA or remit payment for amounts due, it demanded payment from AMDC of "Goodwill Indemnity" – despite such type of payment for "goodwill" to be explicitly foreclosed by the LSA. This demand by ATC was an attempt to coerce AMDC into forgoing the amount ATC owed under the LSA. Notably, however, even in its November 17, 2025 response, ATC did not dispute AMDC's calculations of the amount owed by ATC. Nor did ATC dispute that it has failed to make payment consistent with the timing provision of Paragraph 5(j) of the LSA.

## ATC's Other Post-Termination Misconduct

33. On information and belief, ATC is actively undermining AMDC's ability to conduct business in the region. In direct violation of the LSA's express terms, ATC is selling products to AMDC customers or prospective customers that directly compete with the exact same products ATC distributed for AMDC and that AMDC continues to offer in Kuwait. To further disrupt AMDC's business, ATC, on information and belief, is dissuading the customers it serviced on behalf of AMDC from continuing to purchase AMDC's products.

## FIRST CAUSE OF ACTION
## (Declaratory Relief)

34. AMDC incorporates the allegations contained in Paragraphs 1 through 33 above as though fully set forth herein.

35. An actual controversy has arisen and now exists between AMDC and ATC relating to the parties' rights and obligations under the LSA for which AMDC desires a declaration of rights.

36. ATC's failure to adhere to the transfer, transition, and termination terms of the LSA and pay outstanding receivables to AMDC, the vast majority of which are past due, violates the express terms of the LSA. Accordingly, pursuant to

28 U.S.C. § 2201, AMDC requests a declaration that:

(1) AMDC properly issued a timely non-renewal notice in accordance with the terms of the LSA;

(2) the LSA terminated on May 30, 2025;

(3) pursuant to paragraph 9(b) of the LSA, any and all disputes arising out of the LSA must be adjudicated in a California forum under California law;

(4) pursuant to paragraph 8(h) of the LSA, AMDC may, in its sole discretion, assume ATC's obligations under any and all "on-going tenders" or their equivalent in each of the territories covered by the LSA that survive the (12) month period following expiration;

(5) AMDC is free to seek to directly supply previous customers of ATC, including pursuant to the express terms of the LSA;

(6) ATC's obligations under paragraphs 8(g) and 8(h) of the LSA are not conditioned on any additional payment by AMDC to ATC, and ATC must comply with the LSA's transfer and transition provisions;

(7) pursuant to paragraph 8(i) of the LSA, ATC shall take nothing due to termination of the LSA, and is not due any compensation or reimbursement for, inter alia, "goodwill indemnity" or for any other costs related to or because of termination of the LSA;

(8) pursuant to paragraph 9(g), the prevailing party in any legal dispute arising out of the LSA is entitled to its attorneys' fees and costs; and

(9) the transition and termination terms set forth in paragraphs 7, 8(g) and 8(h), the payment terms set forth in paragraphs 5(g), (h), and (j), limitation on liability provision at 8(i), survival provision at 8(j), attorneys' fees and costs provision at 9(g), and governing law and jurisdiction provisions at 9(b) survived expiration or termination of the LSA.

## SECOND CAUSE OF ACTION

### (Breach Of Contract)

37. AMDC incorporates the allegations contained in Paragraphs 1 through 36 above as though fully set forth herein.

38. Applied Medical Europe B.V. and ATC executed the LSA, which is a valid, binding, and enforceable contract. The LSA was validly assigned from Applied Medical B.V. to AMDC. A separate contract signed by AMDC and ATC evidences this assignment and incorporates by reference the LSA.

39. AMDC fully performed all its obligations and/or conditions under the LSA, except to the extent caused by ATC's acts, omissions, or breaches, entitling it to all of the benefits of the LSA.

40. ATC has breached and continues to breach the LSA by engaging in the acts detailed in this Complaint. ATC's breaches of the LSA include, without limitations, breaching paragraph 5(j) of the LSA by failing to remit payment to AMDC within seven (7) business days upon receipt of payment by ATC for the corresponding customer invoice, which, on information and belief, ATC has collected payments on from end-customers.

41. ATC also has breached and continues to breach, among other things, the 365-day backstop provision set forth in paragraph 5(j) of the LSA by failing to remit payment to AMDC on invoices outstanding for more than 365 days. As of the date of this filing, ATC owes AMDC outstanding receivables in the amount of $1,880,067.46, and at least $2,174,935.50 is currently past due and payable under the express terms of the LSA.

42. After AMDC provided ATC with its timely notice of non-renewal on February 28, 2025, ATC breached the "Transitions Services" provisions set forth in paragraphs 7(b)(i-iv) and (f) of the LSA by, among other things, failing to procure the full transfer of all tenders and existing contracts for products supplied to customers, failing to provide AMDC with a list of current contracts and customer

lists, failing to transfer relevant government approvals, and competing with AMDC.

43. ATC has breached and continues to breach the termination provisions set forth in paragraph 8(g) by refusing to transfer to AMDC a list and copy of all pending and active tenders for products and a list of all customers in the territory, including the customer's full name, shipping address, and purchase history for the twelve (12) month period preceding the termination date by or before May 30, 2025, as required by the express terms of the LSA.

44. As a direct and proximate result of these and other breaches, AMDC has been and will continue to be damaged by ATC's breaches, and is entitled to reimbursement and recovery for any and all losses resulting from the foregoing breaches (including attorneys' fees), an amount which shall be proven at trial which AMDC alleges is well in excess of the jurisdictional minimum of this Court but at least $2,174,575.15.

## THIRD CAUSE OF ACTION

### (Breach Of Implied Covenant Of Good Faith And Fair Dealing)

45. AMDC incorporates the allegations contained in Paragraphs 1 through 44 above as fully set forth herein.

46. The LSA imposed on the parties a duty of good faith and fair dealing in their negotiation, consummation, and performance. Pursuant to that implied covenant, AMDC and ATC had a duty to refrain from acting in any manner that would unfairly interfere with the right of another party to receive the benefit of its bargain.

47. AMDC has complied with the implied covenant of good faith and fair dealing with respect to the LSA, and has substantially complied with all of the terms, conditions, representations, and warranties required of it under the LSA (or has been otherwise excused from compliance with certain terms, conditions, representations, and warranties due to ATC's acts, omissions, and breaches). Accordingly, the conditions required for ATC's full performance under the LSA

has occurred, and AMDC has not excused ATC from complying with the implied covenant of good faith and fair dealing accompanying the LSA.

48. However, ATC has breached the implied covenant of good faith and fair dealing accompanying the LSA by unfairly interfering with AMDC's right to receive the benefits of the LSA. This includes, among other things, ATC's delay tactics and refusal to remit outstanding receivables to AMDC for product despite ATC's receipt of payment from end-customers; ATC's delay tactics and refusal to remit payment to AMDC for invoices that are more than 365 days past due; ATC's refusal to abide by the transfer, transition, and other terms governing the parties' post-termination conduct; and ATC's demand that it be paid compensation or reimbursement for, inter alia, "goodwill indemnity" and other costs related to termination of the LSA in order to secure its performance under the transition provisions, for which it already bargained for and agreed to be bound by without additional compensation.

49. As a direct and proximate result of ATC's breaches of the implied covenant of good faith and fair dealing, AMDC has suffered damages, an amount which shall be proven at trial which AMDC alleges is well in excess of the jurisdictional minimum of this Court but at least $2,174,575.15.

### FOURTH CAUSE OF ACTION
**(Interference With Prospective Economic Advantage)**

50. AMDC incorporates the allegations contained in Paragraphs 1 through 49 above as though fully set forth herein.

51. AMDC maintained, and continues to maintain, an economic relationship with customers in Kuwait that purchased its product, all with the probability of future economic benefit to AMDC based upon the likelihood of AMDC's continued business with such customers. This includes the contemplated customer relationships that were secured based on the goodwill generated through the LSA and which were to continue to benefit AMDC based on ATC's obligations

1  and duties under, among other provisions, paragraph 7(f), 8(h), and 8(g), which
2  were owed to AMDC post-termination.
3      52. ATC had actual knowledge of AMDC's relationships with its
4  customers and AMDC's prospective business based on the past sales of AMDC
5  products to those customers, including through the LSA with ATC.
6      53. AMDC is informed and believes that ATC intended to and did disrupt
7  AMDC's economic relationship with these customers, by among other things,
8  withholding from AMDC the list of all ongoing tenders and customers in the
9  territory, including the Customer's full name, shipping address, and purchase
10 history for the twelve month period preceding the termination, dissuading
11 customers from continuing to purchase AMDC's products, and selling products that
12 compete with AMDC to the same customers ATC serviced for AMDC or to
13 prospective customers. Despite ATC's contractual obligation to provide this
14 customer information pursuant to the transfer and termination obligations set forth
15 at 7(f), 8(h), and 8(g) and AMDC's ongoing requests for this information, including
16 most recently in its final notice sent to ATC on November 2, ATC continues to
17 withhold this information from AMDC.
18     54. As a direct result of ATC's wrongful conduct, AMDC has been
19 damaged, and will continue to be damaged. AMDC is further informed and believes
20 that ATC's conduct alleged herein was intentional and oppressive and was engaged
21 in for financial gain at the expense of AMDC and to harm AMDC. Thus, AMDC is
22 entitled to an award of punitive damages in the amount sufficient to punish ATC
23 and to deter such conduct in the future.

## FIFTH CAUSE OF ACTION
### (Account Stated)

26     55. AMDC incorporates the allegations contained in Paragraphs 1 through
27 54 above as though fully set forth herein.
28     56. Over the course of their relationship, including most recently under the

1  LSA, AMDC and ATC had numerous financial transactions, wherein AMDC
2  provided products to ATC on credit.
3       57.   AMDC provided ATC with regular, itemized, and detailed statements
4  of account, including invoices and financial summaries, which set forth the
5  outstanding balance and amounts due from ATC pursuant to the parties'
6  performance under the LSA.
7       58.   ATC received and accepted these account statements and invoices
8  without objection.
9       59.   ATC, by entering into the LSA, agreed to pay the stated amount by
10 AMDC.
11      60.   Despite AMDC's demands, ATC has failed and refused to pay the
12 balance due on the account, in the amount of at least $2,174,575.15.

## SIXTH CAUSE OF ACTION

### (Unfair Competition)

15      61.   AMDC incorporates the allegations contained in Paragraphs 1 through
16 60 above as though fully set forth herein.
17      62.   By the acts alleged in the preceding paragraphs, ATC has committed
18 business acts and practices that are unlawful, unfair, and/or fraudulent in violation
19 of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200
20 *et seq*. This includes, but is not limited to, disrupting AMDC's relationships with its
21 customers, including by directly competing with AMDC in the region and
22 dissuading customers from purchasing AMDC product, baselessly withholding
23 payment from AMDC in critically high amounts, and attempting to extort a
24 "goodwill indemnity" payment from AMDC–despite the LSA's explicit provision
25 disclaiming such compensation–through threats of legal action.
26      63.   ATC's business acts and practices are unfair and violate the UCL
27 because ATC's acts impair fair and honest competition and otherwise significantly
28 harm competition in the market for AMDC's products.

64. AMDC will be denied an effective and complete remedy absent the relief requested herein, including injunctive relief foreclosing ATC from continuing to engage in acts of unfair competition.

65. AMDC has suffered injury in fact and has lost money or property as a result of such unfair competition, including but not limited to loss of revenue, loss of business relationships and customers, loss of goodwill, increased costs to compete in the Kuwait marketplace, including increased out-of-pocket expenses incurred to combat ATC's wrongful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff AMDC prays for judgment against Defendant ATC as follows:

(a) For compensatory damages in an amount according to proof;

(b) For pre-judgment and post-judgment interest at the maximum legal rate;

(c) For all costs and expenses of suit, including reasonable attorneys' fees, pursuant to Sections 5(j) and 9(g) of the LSA;

(d) For an order of specific performance or preliminary and permanent injunctive relief compelling ATC to comply with its post-termination transition obligations under Sections 7 and 8 of the LSA, including the immediate turnover of all customer lists, tender documentation, and transition materials; and

(e) For such other and further relief as the Court deems just and proper.

Dated: November 26, 2025                    JONES DAY

By: /s/ *Steven M. Zadravecz*
Steven M. Zadravecz
Lauren E. Dutkiewicz

Attorneys for Plaintiff
APPLIED MEDICAL DISTRIBUTION CORPORATION